UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JOSHUA BOFFA,

                Plaintiff,           **MEMORANDUM & ORDER**
                                     20-CV-2632(EK)

        -against-

KILOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY,[1]

                Defendant.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

      Plaintiff Joshua Boffa challenges the Social Security
Administration's denial of his claim for supplemental security
income ("SSI").  Before the Court are the parties' cross-motions
for judgment on the pleadings.  On appeal, Boffa contends that
the administrative law judge ("ALJ") improperly discounted
certain medical opinion evidence concerning his mental
impairments (mainly, depression) and that the agency's Appeals
Council failed to consider important new evidence submitted
after the ALJ's decision.  For the following reasons, the
Commissioner's motion is granted, and Boffa's motion is denied.

---

[1] The Clerk of Court is respectfully directed to amend the caption as reflected above, pursuant to Federal Rule of Civil Procedure 25(d).

## I.  Background

### A.  Procedural Background

In January 2017, Boffa applied for SSI, alleging a disability onset date of February 1, 2015.  Administrative Tr. ("Tr.") 41, ECF No. 10.  The agency denied his claim.  *Id.*  On December 19, 2018, an ALJ held a hearing on Boffa's claim.  *Id.* The ALJ concluded that Boffa was not disabled and therefore not entitled to SSI.  *Id.* at 51.  The Appeals Council denied Boffa's request for review of the ALJ's decision, rendering it final. *Id.* at 1.  Boffa timely sought review of that decision in this Court.

### B.  Evidence of Boffa's Mental Impairments[2]

#### 1.  Boffa's Providers at Housing Works

In November 2013, at age twenty-eight, Boffa began receiving treatment at Housing Works Community Healthcare, where nurse practitioner Kaleen Boyd diagnosed him with major depressive disorder and post-traumatic stress disorder ("PTSD"). *Id.* at 448-50.  During a follow-up visit in December 2013, Boffa reported a history of cutting himself and a suicide attempt in his early twenties.  *Id.* at 446.  On other occasions, however, Boffa denied ever attempting suicide.  *See, e.g., id.* at 356,

---

[2] In addition to the mental health providers discussed below, several providers also treated and evaluated Boffa for his physical health.  *See, e.g., id.* at 520-525.  Because only Boffa's mental health impairments are at issue, however, this order does not address the physical health evidence.

2

367.  Moreover, during most of his visits with Boyd through approximately February 2017, Boffa denied engaging in self-injury or suicidal ideation.  *See, e.g., id.* at 392-94, 402-03, 414-15, 448-49.  In February 2017, Boffa began seeing Joseph DePaola — a psychiatric mental health nurse practitioner — at Housing Works.  *Id.* at 354.  DePaola treated Boffa on a monthly basis through at least October 2018 (the date of the last DePaola treatment notes in the record as of the ALJ's decision).  *See id.* at 542.

DePaola completed two mental health evaluations in connection with Boffa's applications for government benefits: first, a June 2018 report for an application Boffa made for certain state benefits, and, second, an October 2018 report for Boffa's SSI application.  These evaluations contain the opinion evidence that Boffa now contends the ALJ improperly discounted. In the June 2018 report, DePaola reported that Boffa suffered from major depressive disorder and PTSD.  *Id.* at 500.  While DePaola opined that Boffa's prognosis was "fair" (provided that Boffa comply with the contemplated treatment regimen), he described Boffa's response to treatment as "poor at this time," and noted that Boffa was in the process of changing medications. *Id.*  Ultimately, DePaola assessed that Boffa would be "[u]nable to work for at least 12 months" on the grounds that Boffa "remains depressed," has "low motivation," engages in "passive"

suicidal ideation, and has "poor focus/concentration."  *Id.* at 501.[3]

      In the October 2018 report, DePaola largely echoed his observations from a few months prior.  *See* Tr. 526-534.  He observed that Boffa continued to experience symptoms including a "depressed mood," "low energy," "low motivation," and "impaired sleep."  *Id.* at 526.  He noted that Boffa "expressed suicidal thoughts/ideations over [the] course of [treatment]" and had a "safety plan" to protect against suicide risk.  *Id.* at 528. While stating that Boffa had "no problems caring for [him]self or taking public trans[it]," *id.,* DePaola went on to raise doubts that Boffa could function in a typical work environment due to his depression.  He explained that Boffa's "depression impairs [his] ability to communicate effectively [with] others" and opined that there was a "[h]igh risk" that Boffa's condition would be "exacerbated" by "increased stress" in a "routine work setting."  *Id.* at 533.  Further, DePaola stated that Boffa's depression "causes decreased motivation" and "limits [his]

---

[3] As discussed below, DePaola's assessment that Boffa could not work for at least twelve months constituted an opinion on the ultimate issue — Boffa's ability to work — which, in the SSI context, is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d).

ability to remain focused" and to "attend [a] regular work
schedule." *Id.*[4]

### 2.   Agency Consultative Examiner Lucy Kim

In contrast to DePaola, Lucy Kim, Psy.D. — an agency
consultative examiner who evaluated Boffa in person on March 11,
2017 — determined that Boffa's impairments did not meaningfully
limit his ability to work. *Id.* at 482-85.  During that
evaluation, Boffa expressly denied any suicidal ideation. *Id.*
at 482.  Still, Kim recorded Boffa's "dysphoric mood,
psychomotor retardation, psychomotor agitation, worthlessness,
and diminished self-esteem." *Id.*  Boffa also stated that he
experienced hallucinations: he saw "black spots" and heard
voices saying, "[D]on't get any help." *Id.* at 483.  Kim
observed that Boffa's "hygiene was poor" and that his affect was
flat, *id.*, echoing recurring observations in the Housing Works
treatment notes. *See, e.g.*, *id.* at 551, 655, 669.  Boffa
reported that he could dress and groom himself, and that he
cooked, cleaned, shopped, managed money, and took public transit
on his own. *Id.* at 484.  He stated that he "typically spends
his days watching TV." *Id.*

---

[4] In addition to the evidence from Boyd and DePaola, the record also
contains evidence relating to Boffa's mental health from several clinical
social workers who treated Boffa at Housing Works.

Kim diagnosed Boffa with major depressive disorder and PTSD, consistent with Boffa's providers at Housing Works.  *Id.* at 484-85.  Nevertheless, she found "no evidence of limitation" in any functional category that she considered, including the ability to understand and apply directions; to interact adequately with supervisors, coworkers, and the public; to regularly attend work; and to maintain appropriate personal hygiene and attire.  *Id.* at 484.  Kim concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis."  *Id.*  Like DePaola, she stated that Boffa's prognosis was "[f]air."  *Id.* at 485.

3.   Agency Psychiatric Consultant K. Gawley[5]

On March 22, 2017, agency psychiatric consultant K. Gawley, Ph.D., reviewed Boffa's record and assessed his mental capacity; Gawley did not, however, examine Boffa in person.  *Id.* at 152-63.  Gawley determined that Boffa's depression and PTSD were severe, and that they could reasonably be expected to produce Boffa's reported symptoms.  *Id.* at 157, 159.  But Gawley found that Boffa's "statements about the intensity, persistence, and functionally limiting effects of the symptoms" were only

---

[5] Dr. Gawley's first name does not appear in the record.

"[p]artially [c]onsistent" with the total evidence.  *Id.* at 159.
Gawley concluded that Boffa had no limitations with respect to
understanding and memory, concentration and persistence, and
adapting to changes in the workplace.  *Id.* at 160-61.  He also
determined, however, that Boffa had moderate limitations in his
ability to "accept instructions and respond appropriately to
criticism from supervisors" and to "get along with coworkers or
peers without distracting them or exhibiting behavioral
extremes."  *Id.* at 161.

**C.   The ALJ's Disability Evaluation**

        Under the Social Security Act, "disability" is defined
as the "inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental
impairment . . . which has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The Social Security Administration's
regulations require ALJs to follow a five-step sequence in
evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

        First, the ALJ determines whether the claimant is
engaged in "substantial gainful activity."  *Id.* § 404.1520(b).
If not, then at step two, the ALJ evaluates whether the claimant
has a "severe impairment" — that is, an impairment or
combination of impairments that "significantly limits" the
claimant's "physical or mental ability to do basic work

activities." *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, he must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listings").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Boffa had not engaged in substantial gainful activity since the application date.  Tr. 43.  The ALJ concluded that Boffa suffered from a number of "severe" impairments: major depressive disorder, PTSD, personality disorder, hypertension, hyperlipidemia, diabetes mellitus, asthma, and obesity.  *Id.*  The ALJ further concluded, however, that none of these impairments met or exceeded the severity of a Listed Impairment.  *Id.* at 44.

As relevant here, the ALJ specifically considered the applicability of Listings 12.04 ("Depressive, bipolar and related disorders") and 12.15 ("Trauma- and stressor-related disorders").  *Id.* at 45.  To satisfy those listings, a claimant's documented mental impairments must satisfy the criteria in paragraph B or C of each listing.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2).  Under paragraph B, the impairment must result in at least one "extreme" or two "marked" limitations in four areas of functionality: (1) understand, remember, or apply information; (2) interact with others;

(3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* §§ 12.04(B), 12.15(B). Paragraph C requires three conditions to be met: (1) there must be medical evidence documenting the disorder over a period of at least two years, (2) the claimant must be in ongoing treatment or therapy, and (3) he must "have achieved only marginal adjustment" in his "capacity to adapt to changes" in environment or routine. *Id.* §§ 12.04(C), 12.15(C).

The ALJ concluded that Boffa's "mental impairments, considered singly and in combination," did not meet the criteria of Listings 12.04 or 12.15. Tr. 45. First, the ALJ determined that the paragraph B criteria were not met. *Id.* While he found that Boffa had marked limitations in his ability to interact with others, the ALJ concluded that Boffa had only moderate limitations in his ability to adapt or manage himself, and no limitations in the other two categories. *Id.* at 45-46. Next, the ALJ determined that the paragraph C criteria were not satisfied. *Id.* at 46. The ALJ found that Boffa's mental impairments had persisted for more than two years. *Id.* But the ALJ concluded that the record showed more than "marginal adjustment," noting that Boffa was able to cook, shop, ride public transit, and pay bills, among other capabilities. *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings,

9

he must determine a claimant's residual functional capacity

("RFC"), which is the most a claimant can do in a work setting

notwithstanding his limitations.   20 C.F.R. § 404.1545(a)(1).

The ALJ concluded that Boffa had the RFC to perform "sedentary

work" with limitations.   Tr. 46.   Those limitations included

that he work on "simple, routine, and repetitive tasks"; only

"occasionally interact with supervisors, co-workers, and the

general public"; and avoid respiratory irritants.   *Id.*

　　　　In reaching this RFC determination, the ALJ reviewed,

among other evidence, the evaluations of the three mental health

specialists discussed above: DePaola, Kim, and Gawley.   The ALJ

accorded "great weight" to Kim's opinions concerning Boffa's

ability to "understand, remember, or apply information," and to

"concentrate, persist, and maintain pace," finding Kim's

conclusions on those issues to be "supported by [her] detailed

examination" and "generally consistent with the other evidence

in the case record."   *Id.* at 49.   At the same time, the ALJ

concluded that the record "supports finding some greater

functional limitations" in Boffa's ability to interact with

others and to adapt and manage himself than Kim had found.   *Id.*

at 48-49.

　　　　The ALJ went on to consider DePaola's opinions that

Boffa was unable to work for at least twelve months, and that he

would have marked limitations in interacting with others and

responding appropriately to typical work situations.  *Id.* at 49.
Finding these opinions to be "not entirely consistent with the
evidence that [Boffa] has been taking college level art classes,
traveling internationally, and dating during the relevant
period," the ALJ assigned them only "partial weight."  *Id.*
Finally, the ALJ considered Gawley's assessment that Boffa had
"overall mild to moderate limitations," and accorded that
opinion "little probative weight" because it was "based on a
review of an incomplete case record" and "articulated under
outdated . . . criteria."  *Id.* at 49-50.

        At step four, the ALJ considers whether, in light of
the RFC determination, the claimant could perform "past relevant
work."  20 C.F.R. § 404.1520(f).  Here, the ALJ found that Boffa
had no past relevant work.  Tr. 50.  At step five, the ALJ
evaluates whether the claimant could perform jobs existing in
significant numbers in the national economy.  20 C.F.R.
§§ 404.1520(g), 404.1560(b).  The ALJ determined that Boffa
could perform such jobs, including as a document preparer, toy
stuffer, and "table worker."  Tr. 50.[6]  Given that determination,
the ALJ concluded that Boffa was not disabled.  Tr. 51.

---

        [6] A table worker "[e]xamines squares (tiles) of felt-based linoleum
material passing along on [a] conveyor and replaces missing and substandard
tiles."  *739.687-182 Table Worker*, *Dictionary of Occupational Titles* (4th ed.
1991), 1991 WL 680217.  Notably, the "vast majority" of DOT entries were last
updated in 1977.  Lisa Rein, *Social Security Denies Disability Benefits Based
on List with Jobs from 1977*, Washington Post (Dec. 27, 2022, 10:15 A.M.),

D.    **Late Evidence Submitted to the Appeals Council**

After the ALJ's decision on March 22, 2019, Boffa submitted additional evidence to the agency's Appeals Council that was not part of the record before the ALJ.  That evidence included certain records from 2017 and 2018: a report from Natacha Baron, a nurse practitioner who treated Boffa at Housing Works; two more wellness reports from DePaola; and two psychiatric assessments prepared in connection with Boffa's application for state welfare benefits.  *Id.* at 96-118.  The evidence also included treatment notes from April 2019 and a "Psychiatric Functional Assessment" from August 2019 — both prepared by providers who treated Boffa at Housing Works.  *Id.* at 21-28, 34-37.  The Appeals Council declined to rely on the evidence predating the ALJ's decision, finding no "reasonable probability that it would [have] change[d] the outcome of the decision."  *Id.* at 2.  The Appeals Council also concluded that some of the newly proffered evidence — specifically, that which postdated the ALJ's decision — did "not relate to the period at issue" and thus offered no information as to whether Boffa was disabled on or before March 22, 2019.  *Id.*

---

https://www.washingtonpost.com/politics/2022/12/27/
social-security-job-titles-disabled-applicants-obsolete/.

## II.   Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[7]

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

## III.   Discussion

Boffa raises two arguments here, as noted above. First, he contends that the ALJ improperly evaluated Joseph DePaola's June 2018 and October 2018 reports on Boffa's mental impairments.  Specifically, he argues that the ALJ erroneously discounted two of DePaola's medical opinions: (a) that Boffa was unable to work for at least twelve months (the "inability-to-

---

[7] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

work opinion"), and (b) that Boffa had marked limitations in interacting with others and responding appropriately to typical work situations (the "marked limitations opinion").  Second, Boffa contends that, following the ALJ's decision that he was not disabled, the Appeals Council improperly refused to consider new and material evidence.  For the reasons set forth below, Boffa's arguments do not prevail.

**A.   The ALJ Properly Considered DePaola's Inability-to-Work and Marked Limitations Opinions**

When Boffa applied for supplemental security income in January 2017, nurse practitioners like DePaola were not an "acceptable medical source" under the prevailing regulations, *see* 20 C.F.R. § 416.927; instead, they were deemed "other sources" thereunder.  *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Only an acceptable medical source would be entitled to deference as a "treating source."  *See* 20 C.F.R. § 404.1527 ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").  Thus, DePaola's opinions from June and October of 2018 – that Boffa could not work for at least one year, and that he had marked limitations in interacting with others and acting appropriately in usual work

situations, respectively — were entitled to no specific
deference.

The ALJ was required only to do two things in
evaluating DePaola's opinions.  First, he needed to assess them
according to the factors listed in 20 C.F.R. § 404.1527(c).  *See
Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344
(E.D.N.Y. 2010); SSR 06-03p, at *3-4.  Those factors include:
(1) the length, nature, and extent of the source's treatment
relationship with the claimant; (2) the source's specialization;
(3) the opinion's supportability (*i.e.*, the extent to which the
source explains his opinion, and supports it with objective
medical evidence); and (4) the consistency of the opinion with
the other evidence in the record.  *See* 20 C.F.R. § 404.1527(c).
Second, the ALJ needed to explain his decision on what weight to
accord the reports.  *See Canales*, 698 F. Supp. 2d at 344.
Ultimately, an "ALJ is empowered with the discretion to afford
less than controlling weight, or even no weight, to the opinion
of other sources." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104
(N.D.N.Y. 2011).

Here, the ALJ reviewed DePaola's inability-to-work and
marked-limitations opinions, and concluded that his assessments
were "not entirely consistent with the evidence that [Boffa] has
been taking college level art classes, traveling
internationally, and dating during the relevant period."  Tr.

49.  Accordingly, the ALJ assigned those opinions only "partial weight."  *Id.*

Boffa first argues that the ALJ erred by failing to address each factor in 20 C.F.R. § 404.1527(c).  Pl. Mot. for J. on Pleadings ("Pl. Br.") 17-18, ECF No. 11-1.  This argument lacks merit.  For one, DePaola's opinion that Boffa could not work for at least twelve months was an opinion on an ultimate administrative issue — one that the regulations expressly "reserve[] to the Commissioner."  *See* 20 C.F.R. § 404.1527(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determinate that you are disabled.").  Accordingly, the ALJ had no obligation to "give any special significance" to that opinion.  *Id.*

Further, the Second Circuit has explained that even when addressing a treating source's opinion, let alone an other-source opinion, no "slavish recitation of each and every factor" is required as long as "the ALJ's reasoning and adherence to the regulation are clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *see also Adam G. v. Comm'r of Soc. Sec.*, No. 20-CV-983, 2021 WL 5005723, at *9 (W.D.N.Y. Oct. 28, 2021) (the regulations "did not require the ALJ to discuss each of the factors set forth in 20 C.F.R. § 404.1527[(c)] in evaluating the opinion of 'other sources'").  The Second Circuit has also stated that an opinion's inconsistencies with other evidence in

16

the record "can constitute substantial evidence to support . . . attribut[ing] only limited weight to that opinion." *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017).  In *Suttles v. Berryhill*, for example, the Second Circuit affirmed the ALJ's decision to give little weight to the opinions of a nurse practitioner "because she was not an acceptable medical source and her opinions were inconsistent with [the claimant's] medical records."  756 F. App'x 77, 77-78 (2d Cir. 2019).

Here, the ALJ clearly explained that he partially discounted DePaola's opinion evidence because it was inconsistent with other evidence in the record, and he identified that other evidence.  *See* Tr. 49.  This explanation was legally sufficient.  *See, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (affirming the ALJ's rejection of treating physician's opinion because it was "contrary to his own treatment notes"); *Burnette v. Colvin*, 564 F. App'x 605, 608 (2d Cir. 2014) (the ALJ "properly" gave "little weight" to consultative physician's evaluation that was "inconsistent with the record as a whole").

Boffa next argues that the ALJ failed to consider certain evidence supporting DePaola's inability-to-work and marked limitations opinions, such as treatment notes showing that Boffa often had depressed mood, suicidal ideations, and poor hygiene, among other symptoms.  *See* Pl. Br. 18-19.  But the

ALJ did explicitly consider such evidence.  He noted his review
of "treatment notes from 2013 through October 2018 that reflect
diagnoses including major depressive disorder and PTSD," and
specifically discussed treatment notes from 2017 and 2018 noting
Boffa's "passive suicidal ideations, auditory hallucinations,
depressed moods, soft speech, constricted affects, greasy hairs,
a malodorous presentation, and moderately impaired insight."
Tr. 47.  Although the ALJ did not mention DePaola by name when
discussing this evidence, the exhibits that the ALJ cited
(namely, 3F and 16F) contain evidence from DePaola and other
providers who treated Boffa at Housing Works.  *See id.*  This
argument therefore fails.

        Boffa also argues that the three pieces of evidence
the ALJ cited when discussing DePaola's inability-to-work and
marked limitations opinions offered an insufficient basis for
discounting those opinions.  First, Boffa notes that the reports
of his school attendance and international travel were
inconsistent with his testimony during the hearing before the
ALJ that he had not attended art classes in two years and had
not gone to Italy.  *See* Pl. Br. 19.  But the ALJ addressed these
inconsistencies elsewhere in his decision and found that they
demonstrated Boffa's limitations in interacting with others and
managing himself.  *See* Tr. 48.  Second, Boffa contends that the
"mere fact of being in [a] relationship" is "not inconsistent

with a disability claim." Pl. Br. 21. This is not the only
other evidence that the ALJ considered, however.

       In other sections of the decision, the ALJ discussed
additional evidence of Boffa's activities and condition,
including reports that Boffa cooked, cleaned, shopped, did
laundry, cooked simple meals, used public transit, managed his
own finances, and went to family events. Tr. 47-48. Further,
the ALJ cited treatment notes — including some from DePaola —
showing that Boffa often appeared to be pleasant, cooperative,
coherent, and have good insight and judgment. *Id.* at 49. Those
portions of the record show that substantial evidence supported
the ALJ's partial discounting of DePaola's inability-to-work and
marked limitations opinions. *Cf. Suttles*, 756 F. App'x at 77-78
(inconsistencies between nurse practitioner's opinions and other
medical evidence constituted substantial evidence to support the
ALJ's decision to give little weight to those opinions). The
ALJ had no duty to repeat every piece of evidence that he found
to be in tension with those opinions. *Cf. Suttles v. Berryhill*,
No. 17-CV-476, 2018 WL 2926273, at *8 (N.D.N.Y. June 11, 2018)
("[I]t is clear from the ALJ's recitation of the evidence that
the ALJ implicitly declined to rely on this opinion based on

inconsistency with the considered evidence."), *aff'd*, 756 F. App'x 77.[8]

## B.   The Evidence That Boffa Submitted to the Appeals Council After the ALJ's Decision Does Not Warrant Further Review

In March 2020, when the Appeals Council denied review of Boffa's appeal, it had a mandate to consider evidence submitted after the ALJ's decision only when it was "new" *and* "material." *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016); 20 C.F.R. § 416.1470(a)(5) (2017) (amended 2020).[9] Similarly, a federal court "may at any time" order the Commissioner to consider evidence when it is (1) new and (2) material, and (3) when "good cause" exists for its late submission. *Lisa v. Sec'y of Health & Hum. Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (citing 42 U.S.C. § 405(g)). Evidence is new when it is "not merely cumulative of what is already in the record," *id.*, and material when it is "both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Pollard v. Halter*, 377 F.3d

---

[8] In his reply brief, Boffa also argues for the first time that the ALJ failed to consider Boffa's ability to manage stress. *See* Pl. Reply Br. 6, ECF No. 15. But "[a]rguments may not be made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). Therefore, the Court will not consider this argument.

[9] The amendment to 20 C.F.R. § 416.1470 in December 2020 added a third requirement: a showing of "good cause" by the claimant for not submitting the evidence prior to the ALJ's decision. Because that amendment postdated the Appeals Council's decision, the Appeals Council had no obligation to consider the cause of the late submission.

183, 193 (2d Cir. 2004).  To satisfy the materiality factor, the claimant must show "a reasonable possibility that the new evidence would have influenced the Commissioner to decide [the] claimant's application differently."  *Id.*

    1.   <u>Late Evidence Predating the ALJ's Decision</u>

        Among the additional materials that Boffa submitted to the Appeals Council were medical reports predating the ALJ's decision: three reports from his providers at Housing Works — two from DePaola and one from nurse practitioner Natacha Baron — and two consultative psychiatric evaluations prepared for Boffa's state welfare applications.  The Appeals Council declined to consider that evidence because it did "not show a reasonable probability that it would [have] change[d] the outcome of the decision."  Tr. 2.

        Boffa contends that this was error — that the evidence was indeed material.  *See* Pl. Br. 23.  He raises two principal arguments.  First, he argues that the reports are consistent with — and therefore bolster — DePaola's inability-to-work and marked limitations opinions because they document similar symptoms and opine that Boffa could not perform full-time work. *Id.*  Second, he argues that the ALJ "erroneous[ly] reli[ed] on perceived inconsistences" in the record "without accounting for the larger context of how Mr. Boffa's mental health condition affects his presentation."  *Id.* at 24.  As to this point, Boffa

cites notes in DePaola's 2017 reports mentioning that he was on leave from art school and argues that these notes undermine the ALJ's reliance on his school attendance in discounting DePaola's opinion evidence. *Id.* at 23. These arguments are unavailing.

First, the evidence from Housing Works, *see* Tr. 96-101, is largely duplicative of the reports and treatments notes that were already in the record. The Second Circuit has held that remand is not required when the Appeals Council declines to consider additional "evidence [that] was essentially duplicative of evidence considered by the ALJ." *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 40 (2d Cir. 2020). Moreover, all three reports contained opinions as to whether Boffa could work, which is a question reserved to the Commissioner, as discussed above. Therefore, there is no reasonable probability that this evidence would have changed the ALJ's decision. *See id.* ("[W]e remain convinced that the Appeals Council would reach the same conclusion after considering the [duplicative] evidence.").

Second, the reports from state agency examiners Georges Casimir and David Salvage from January 2017 and April 2018, respectively, also do not meet the test for materiality. Dr. Casimir opined that Boffa was employable but should work in a low-stress environment. Tr. 107, 109. This conclusion accords with the ALJ's determination that Boffa should work in a sedentary role on simple tasks and with only occasional social

interaction.  *See id.* at 46.   Dr. Salvage, on the other hand,
opined that Boffa was "not currently capable of pursuing gainful
employment as he is in the midst of a psychiatric decompression
which involves the need for an inpatient hospitalization."  *Id.*
at 117.  After Boffa expressed suicidal thoughts during his
examination by Salvage, Boffa was transferred to the hospital
for a psychiatric evaluation.  *Id.* at 775.  But the hospital
records from that visit diminish the probative value of
Salvage's opinion.

At the hospital, Boffa acknowledged having "chronic
suicidal ideas dating back to a year ago" but denied any intent
or plan to harm himself.  *Id.*  The emergency department doctor
who treated Boffa opined that he was "not an imminent danger to
[him]self at this time" and reported that Boffa declined
voluntary admission to the hospital.  *Id.*  The doctor referred
Boffa for an outpatient appointment with DePaola to occur the
following week.  *Id.*  Thus, when read together with the hospital
report from the same day, Salvage's opinion does not add
materially to the mix of information that the ALJ considered.

2.   Late Evidence Postdating the ALJ's Decision

Boffa also submitted certain additional evidence from
Housing Works that postdated the ALJ's decision.  That evidence
comprised treatment notes from April 2019 and a "Psychiatric
Functional Assessment" from August 2019.  *Id.* at 21-28, 34-37.

The Second Circuit has held that when evidence "did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed" for the late submission. *Pollard*, 377 F.3d at 193. Here, the April 2019 treatment notes and August 2019 assessment did not exist as of the ALJ's hearing. Accordingly, the only question is whether that evidence is material. *See id.*

While the parties dispute whether the evidence relates to Boffa's condition prior to the ALJ's decision, the Court need not address that issue because the evidence would not have changed the ALJ's decision. The April 2019 treatment notes from nurse practitioner Margarette Dessources is largely cumulative of what is already in the record and thus would not likely have influenced the ALJ's decision. *See Ramsey*, 830 F. App'x at 40. The August 2019 report prepared by Amelia Kidd — a social worker who began treating Boffa in May 2017 — is not material, either.

Kidd assessed Boffa as having marked limitations in several functional categories, including the ability to "[u]nderstand and respond to social cues," and to "[c]ooperate and handle conflict with others." Tr. 23. She also assessed Boffa as having marked limitations in his capacity to "[c]omplete tasks in a timely manner," and to "[r]espond appropriately to changes in a routine work setting." *Id.* at 23-24. Further, Kidd estimated that Boffa would be absent from

work, and late to work, twice per month "as a result of [his] symptoms or treatment." *Id.* at 24.

Boffa argues that "this additional evidence provided more specific information and supported disabling limits in Mr. Boffa's ability to maintain attendance, timely complete tasks, perform at a consistent pace, and deal with normal work stress." Pl. Br. 24. He asserts that Kidd's report supports DePaola's inability-to-work and marked limitations opinions because it shows that he is "unable to sustain the basic mental demands of work," and aligns with other evidence of his symptoms in the record. *Id.* at 25.

This argument lacks merit. First, as a clinical social worker, Kidd was not an acceptable medical source and thus her opinion evidence was entitled to no deference. *See* 20 C.F.R. § 404.1527; SSR 06-03p at *2. Second, Kidd's opinion that Boffa would be absent from work twice monthly, and late to work another two days per month, entailed merely checking boxes on a standard form without explanation. *See* Tr. 24. In *James D. v. Commissioner of Social Security*, the district court held that the ALJ did not err in declining to "adopt the absence-related limitations" that the doctors had "provided on a check-the-box form" — specifically, that the claimant would be absent more than four days per month. 547 F. Supp. 3d 279, 287 (W.D.N.Y. 2021). The ALJ's decision to reject those absence-

related opinions was justified, the court explained, because the
doctors had offered "no supporting explanation as to why they
believed Plaintiff would be absent from work so frequently."
*Id.*  Given the lack of analysis to support Kidd's assessment
that Boffa would be either absent or late on a regular basis,
that opinion has limited value.

Third, treatment notes that Kidd signed between May
2017 and September 2018 containing similar observations of
Boffa's symptoms and condition already appeared in the record
before the ALJ.  *See, e.g.*, Tr. 546-47, 603-04, 658-59.[10]  Thus,
while this report contained Kidd's high-level assessment of
Boffa's impairments, a significant portion of the medical
evidence underlying that assessment was already extensively
documented at the time of the ALJ's decision.  Kidd's report
therefore would not have meaningfully changed the record before
the ALJ.  *Cf. Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir.
2014) ("The Appeals Council had substantial evidence supporting
its decision to decline review, as the new evidence that [the
claimant] presented did not alter the weight of the evidence so
dramatically as to require the Appeals Council to take the
case.").

---

[10] While Kidd signed these notes, they also contain the names of other
clinical social workers, suggesting that Kidd may have simply reviewed them.

### IV.   Conclusion

For the foregoing reasons, the Commissioner's motion is granted, and Boffa's motion is denied.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   July 15, 2023
         Brooklyn, New York

27